**In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.**

**No. 70-347.**

United States District Court, E. D. Pennsylvania.

March 16, 1972.

Eugene Anderson, for Trustees of Penn Central Transportation Co.

Douglas M. Galin, Davis, Polk & Wardwell, New York City, for Morgan Guaranty Trust Co. of N. Y.

Alan C. Kauffman, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for Louisville & Nashville R. R.

## MEMORANDUM AND ORDER
### 612

FULLAM, District Judge.

The Trustees have petitioned for authority to lease a 5.9-mile segment of the Debtor's rail line to the Louisville and Nashville Railroad Company ("L & N"). The segment is part of the 33-mile Evansville-Mount Carmel Branch which the Debtor leases from one of its subsidiaries, the Cleveland, Cincinnati, Chicago and St. Louis Railway Co. (the "Big Four"). The branch is subject to the lien of the Big Four Refunding and Improvement Mortgage and its supplemental indenture. Morgan Guaranty Trust Company of New York is indenture trustee under both the mortgage and the supplemental indenture.

The Evansville-Mount Carmel Branch is used only for a comparatively small volume of interchange traffic. The Trustees anticipate that a net saving of $44,000 annually would result from the abandonment of this branch and the use of alternate routes for the interchange traffic. The Trustees seek authority here to proceed before the Interstate Commerce Commission for permission to abandon most operations on the Branch. The Trustees also intend, with the later permission of this Court, to sell the 5.9-mile segment in question to the L & N for $345,000 if and when the Trustees can obtain the release of the lien of the Big Four mortgage from this segment.

Until the segment can be sold, the Trustees propose to lease it to the L & N for an annual rental of $22,400. Under the lease, the Trustees will be permitted to continue current rail operations until the ICC approves the abandonment.

No one contests the wisdom of the proposed lease or abandonment. The only issue to be resolved here is who would be the appropriate recipient of the annual rental. Morgan Guaranty seeks to obtain and hold the funds in escrow for the benefit of the Big Four bondholders. Morgan Guaranty points out that under the mortgage, an event of default has occurred and that, in that event, under Article Eleven, Section 3 of the mortgage, the indenture trustee "shall be entitled to collect and to receive all . . . earnings, incomes, rents . . . and every part thereof" from the property subject to the lien of the mortgage. Morgan Guaranty contends that a proper exercise of this Court's equitable discretion should give effect to this contractual right of the bondholders, for two reasons: First, the amount of money involved is small in relation to the Debtor's financial needs but, apparently, much larger in relation to the bondholders' needs, and therefore the dual interests of preserving the estate for the benefit of creditors and preserving an ongoing railroad would best be served by applying these funds to give the creditor-bondholders additional security for their debt. Second, it is contended that the bondholders may not be adequately protected against the diminution in value of the segment to be leased.

Neither argument is persuasive. Considerations of relative size and need, standing alone, would justify preferring the claims of virtually all creditors to

the public need for continued rail service. This argument cannot be considered. It is clear that there will be no diminution in lien value, in view of the probability that L & N will make substantial improvements (paragraph 7, Lease-Purchase Agreement, Document No. 2475), the requirement that the property be restored to the lessor on termination in as good condition as at present, and the recognition (in paragraph 9 of the Lease-Purchase Agreement) that the mortgage lien attaches to all improvements.

The contention that Morgan Guaranty should receive and escrow the rent assumes that this would constitute "non-railroad" income, rather than revenue derived from rail operations. Under these circumstances, this attempted distinction is untenable. The petition will be granted.

### ORDER NO. 612

And now, this 16th day of March, 1972, on consideration of the petition filed by the Trustees and a hearing held with respect thereto on January 24, 1972, it is ordered:

1. The Trustees are authorized to join with Cleveland, Cincinnati, Chicago and St. Louis Railway Company in leasing the line described in the petition to the Louisville and Nashville Railroad Company for an annual rental of $22,400 and in accordance with the terms of the proposed agreement.

2. The Trustees are authorized to carry out the aforesaid agreement, provided that the line shall not be sold to the Louisville and Nashville Railroad Company without further order of this Court.

3. The Trustees are authorized to apply to the Interstate Commerce Commission under Section 1(18) of the Interstate Commerce Act for approval of the abandonment of their operation of the line between Evansville, Indiana, and Mount Carmel, Illinois, and, upon receipt of such approval, to effectuate such abandonment.

4. The Trustees are authorized to execute and deliver all documents and to take all steps which may be necessary and proper to accomplish the foregoing lease of property and abandonment of railroad operations.